J-S54019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HENRY CULVER | |
| Appellant | No. 31 WDA 2017 |

Appeal from the PCRA Order December 14, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008632-2011

BEFORE: OTT, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:　　　　　　　**FILED OCTOBER 13, 2017**

Henry Culver appeals *pro se* from the December 14, 2016 order entered in the Allegheny County Court of Common Pleas dismissing his petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

This Court set forth the following factual and procedural history in deciding Culver's direct appeal:

> The trial court set forth the background of this case, as follows:
>
>> The Commonwealth's evidence established that on December 14, 2011, the victim, Scott Goodman, was at the home of his father, Albert Goodman. The elder Goodman was sitting in his home when he heard an argument coming from the kitchen. He

---

[*] Former Justice specially assigned to the Superior Court.

recognized both voices[:] that of his son and that of [Culver], with whom he was also familiar. Mr. Goodman[1] walked into the kitchen and saw [Culver] shoot his son. [Culver] then turned to Mr. Goodman and told him to back off or he would be next. Mr. Goodman then fled out the front door while [Culver] left through the back door.

At approximately the same time that Mr. Goodman was leaving his house, a witness, [Rasheeda] Saxton, was arriving. She saw [Culver] come from the back of the house,] get into his car and drive off. While she was walking towards the Goodman residence, she heard Albert Goodman calling for help and, as she went around to the back, she saw Scott Goodman lying on the ground, bleeding. [When police arrived on the scene, Ms. Saxton told them that "Hank (meaning [Culver]) did this."] Scott Goodman was taken to the hospital where he eventually died of his wounds.

LaPerry Raymond, the mother of [Rasheeda] Saxton, also testified. She said that during that evening, she was on the phone with Scott Goodman. She heard a door slam and Scott told her to hold on. He then told her that it was "Hank" and he would call her back later. A few minutes later, her daughter called and told her that Scott Goodman had been shot. . . .

[Detective Kenneth Ruckel of the Allegheny County police department testified that he found a black leather glove with a zipper near the cuff at the scene of the murder. A dark brown glove that was inside the black one as though the two were worn together contained Culver's DNA.]

---

[1] Albert Goodman's trial testimony was video-recorded in advance of trial because he was in poor health. Goodman died before trial, and the jury was shown the video-recorded testimony. *See Commonwealth v. Culver*, No. 321 WDA 2013, unpublished mem. at 2 n.2 (Pa.Super. filed Oct. 1, 2014).

The Commonwealth also presented evidence concerning [Culver]'s arrest sometime later in Miami.
. . .

After receiving a tip as to where [Culver] might be found, Deputy U[.]S[.] Marshal[] Ty Fallow and others went to this location [at a rescue mission in Miami, Florida.] They observed [Culver] and Marshal[] Fallow addressed [him], "Mr. Culver, Hank, Henry." At this point, [Culver] turned around. Later, as they were asking him his name, he told them that his name was Rocky Wallace. He showed them an ID [from the rescue mission] that bore the name Rocky Wallace but had his photograph on it. [Culver] was [detained] and transported to the Dade County Jail [where fingerprint analysis confirmed that he was Henry Culver and he was then arrested.] He was in a holding cell for a lengthy time as he waited his turned to be processed. The defendants' names are called out frequently. Marshal[] Fallow observed that on all but one occasion when the jail called out for Henry Culver, [Culver] did not respond. Once, however, when a nurse called the name Henry Culver, he did verbally respond.

Marshal[] Fallow also testified that he was present when [Culver] was provided with several intake forms including a property form. This form itemizes the property that was on his person when he was arrested. It has a place for the inmate's signature. Marshal[] Fallow observed [Culver] sign the name Rocky Wallace to that form. [The Commonwealth] introduced [the document] into evidence at trial.

(Trial Court Opinion, 1/17/14, at 3-4, 5). . . .

At the conclusion of trial, the jury convicted [Culver] of [first-degree murder, firearms not to be carried without a license, terroristic threats, and simple assault

– physical menace.[2] In a bifurcated nonjury trial, the trial court convicted Culver of persons not to possess firearms.[3]] On December 13, 2012, the court sentenced [Culver] to a term of life in prison without the possibly of parole on the murder of the first degree conviction, plus a concurrent aggregate term of imprisonment of not less than nine and one-half nor more than nineteen years on the remaining counts. The court denied [Culver]'s post-sentence motions on January 17, 2013.

***Commonwealth v. Culver***, No. 321 WDA 2013, unpublished mem. at 1-4 (Pa.Super. filed Oct. 1, 2014) (some alterations in original, footnotes omitted).

On February 14, 2013, Culver timely filed a notice of appeal. On October 1, 2014, this Court affirmed Culver's judgment of sentence. Culver then filed a petition for allowance of appeal, which our Supreme Court denied on March 31, 2015.

On July 23, 2015, Culver, acting *pro se*, filed a PCRA petition. On September 1, 2015, the PCRA court appointed counsel. On July 1, 2016, counsel filed a motion to withdraw as counsel and a ***Turner***/***Finley***[4] "no-merit" letter. On September 21, 2016, the PCRA court granted counsel's motion to withdraw and gave notice of its intent to dismiss Culver's petition

---

[2] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), 2706(a)(1), and 2702(a)(3), respectively.

[3] 18 Pa.C.S. § 6105(a)(1).

[4] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

under Pennsylvania Rule of Criminal Procedure 907. On December 14, 2016, the PCRA court dismissed Culver's petition. On December 16, 2016, Culver filed a response to the notice of intent to dismiss, asserting that he had not seen the notice of intent to dismiss and only became aware of it after being informed that his PCRA petition had been dismissed. On January 4, 2017, Culver timely filed a notice of appeal.

Culver raises six issues on appeal:

1. Did the ineffective assistance of [Culver]'s PCRA Counsel and the PCRA Court's failure to provide [Culver] with his trial transcripts combine to deprive [Culver] of his due process rights under the state and federal constitutions?

2. Did the PCRA Court err in dismissing without a hearing the claim that Trial Counsel . . . was ineffective for failing to present expert witness testimony concerning the DNA sample taken from the gloves found at the scene of the homicide?

3. Did the PCRA Court err in dismissing without a hearing the claim that Trial Counsel . . . was ineffective for failing to properly prepare for trial by interviewing witnesses LaPerry Raymond and Rasheeda Saxton before they testified?

4. Did the PCRA Court err in dismissing without a hearing the claim that Trial Counsel . . . was ineffective for failing to obtain medical records from Jefferson Memorial Clinic in Miami, Florida that would have explained that [Culver] went to Florida seeking medical treatment, not to avoid apprehension by the police?

5. Did the PCRA Court err in denying without a hearing the claim that Trial Counsel . . . was ineffective for failing to challenge Albert Goodman's competency to testify?

6. Was trial counsel ineffective for failing to properly impeach Albert Goodman's testimony?

Culver's Br. at 7 (suggested answers omitted). For ease of disposition, we address Culver's issues out of order.

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." ***Commonwealth v. Melendez-Negron***, 123 A.3d 1087, 1090 (Pa.Super. 2015).

Culver asserts a number of trial counsel ineffectiveness claims.

> To prevail on . . . [ineffective assistance of counsel] claims, [the PCRA petitioner] must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction.

***Commonwealth v. Spotz***, 18 A.3d 244, 260 (Pa. 2011). "The law presumes counsel was effective[.]" ***Commonwealth v. Miner***, 44 A.3d 684, 687 (Pa.Super. 2012). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." ***Commonwealth v. Williams***, 980 A.2d 510, 520 (Pa. 2009).

First, Culver argues that trial counsel was ineffective because counsel did not present an expert witness to refute the Commonwealth's expert witness testimony on the DNA evidence recovered. According to Culver, when the Commonwealth provided trial counsel the DNA test reports, "[s]he

immediately sought a postponement because she found the report troubling . . . [and] told [Culver] it was necessary to hire a DNA expert to rebut the Commonwealth's contention." Culver's Br. at 17. Culver asserts that trial counsel told him "that the DNA science the Commonwealth was using was questionable at best . . . ." *Id.* At trial, however, counsel did not present a rebuttal DNA expert witness. Culver asserts that trial counsel "never gave a reason and never offered an explanation." *Id.* at 18. For these reasons, Culver argues that trial counsel had no reasonable basis for withholding expert testimony, as "testimony from a competing expert on such a critical issue would have been more convincing than . . . argument from [trial] counsel" and his "innocence claim would have been considerably more compelling than a simple denial of guilt." *Id.* at 20. We disagree.

With respect to claims of ineffectiveness for failing to call an expert rebuttal witness, our Supreme Court has stated that:

> [t]he mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate than an expert witness was available who would have offered testimony designed to advance appellant's cause. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by the prosecution. Thus, the question becomes whether or not [defense counsel] effectively cross-examined [the Commonwealth's expert witness].

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (internal quotations and citation omitted; alterations in original).

We conclude that the PCRA court did not err in dismissing Culver's claim. [5] The PCRA court correctly observed that Culver's claim fails because "there was no reason to believe that a DNA expert retained by [Culver] would have come to a conclusion different from that which was reached by the Commonwealth expert." PCRA Ct. Op., 9/21/16, at 5. In addition, our review of the trial testimony shows that trial counsel effectively cross-examined the Commonwealth's expert witness, pointing out possible inconsistencies in the results and flaws in the DNA analysis. *See* N.T., 9/18-21/16, at 288-303. Because Culver failed to show that he had an expert who would testify differently than the Commonwealth's expert and trial counsel effectively cross-examined the Commonwealth's expert witness, trial counsel was not ineffective for not presenting a rebuttal expert witness. Accordingly, Culver's claim lacks merit.

Next, Culver claims that trial counsel was ineffective because she did not interview witnesses LaPerry Raymond and Rasheeda Saxton before trial. According to Culver, his trial counsel received statements from both

---

[5] The PCRA court also found that the DNA evidence was merely circumstantial because it only placed Culver's DNA at the scene. According to the PCRA court, the direct evidence, specifically the eyewitness testimony of Albert Goodman and Rasheeda Saxton, made the DNA evidence non-essential to the Commonwealth's case.

witnesses in discovery. Culver asserts that when trial counsel determined that both witnesses would be testifying against Culver, she "felt that it was crucial that she . . . interview the women prior to trial" but never did so. Culver's Br. at 23.

With respect to interviewing witnesses prior to trial, our Supreme Court has stated that

> trial counsel has a general duty to undertake reasonable investigations or make reasonable decisions which render particular investigations unnecessary. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance. Nevertheless, we have never held that trial counsel is obligated to interview every Commonwealth witness prior to trial. The failure of trial counsel to interview a particular witness prior to trial does not constitute ineffective assistance of counsel unless there is some showing that such an interview would have been beneficial to the defense under the facts and circumstances of the case.

*Commonwealth v. Mitchell*, 105 A.3d 1257, 1276 (Pa. 2014) (internal quotations and citations omitted).

In its opinion, the PCRA court concluded that this claim lacked merit because trial counsel cross-examined these witness effectively, Culver "did not explain how a pre-trial interview of an opposing witness would have change[d] the outcome of the trial[,]" and the witnesses "could [not] have been compelled to submit to such an interview." PCRA Ct. Op., 9/21/16, at 5. After reviewing the notes of testimony, we agree with the PCRA court's

analysis and conclude that it did not err in dismissing this ineffectiveness claim.

Next, Culver argues that trial counsel was ineffective for failing to obtain medical records that would have shown that Culver traveled to Florida to be treated for an illness. According to Culver, he told trial counsel that while he was on parole, he was diagnosed as possibly having cancer and informed his parole officer. While the parole officer recommended that Culver obtain a second opinion, Culver saw an advertisement for a medical clinic in Miami, Florida. Knowing "that his [p]arole [o]fficer would not permit him to travel across state lines," Culver chose to travel under the assumed name of "Rocky Wallace." Culver's Br. at 25.

Culver contends that his trial counsel told him that it would be beneficial to obtain the medical records of "Rocky Wallace" from the medical clinic, but trial counsel never attempted to obtain them and gave multiple excuses as to why she could not obtain them. According to Culver, trial counsel had no reasonable basis for failing to obtain these records, and this failure prejudiced him because the only inference the jury could draw from his travel was that he fled to avoid apprehension. We disagree.

With respect to ineffectiveness claims based on a failure to investigate, our Supreme Court has stated that

> [c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's strategic choices made after less than a complete investigation are considered reasonable, on a claim of ineffective assistance,

- 10 -

precisely to the extent that reasonable professional judgments support limitations on the investigation. Failure to conduct a more intensive investigation, in the absence of any indication that such investigation would develop more than was already known, is simply not ineffectiveness.

***Commonwealth v. Eichinger***, 108 A.3d 821, 847 (Pa. 2014) (internal citations omitted).

The PCRA court concluded that this claim was meritless:

The fact that [Culver] received medical care in Florida is not inconsistent with him travelling there to avoid apprehension. Moreover, the fact that [Culver] had a fake ID and provided a fake name to the officers who arrested him and at the jail where he was being processed certainly corroborated the Commonwealth's contention that [Culver] fled to Florida and allowed the prosecution to argue to the jury that [Culver] fled this area and assumed a fake identity because he was conscious of his guilty and was trying to avoid apprehension.

PCRA Ct. Op., 9/21/16, at 6. We agree with the PCRA court's analysis and conclude that it did not err in dismissing the ineffectiveness claim.

Next, Culver asserts that trial counsel was ineffective for failing to challenge Albert Goodman's competency. According to Culver, Albert Goodman's age and severe illness prevented him from "express[ing] intelligent answers to questions." Culver's Br. at 29. Culver relies on inconsistencies in Goodman's video-recorded testimony and argues that while "[i]ndividually, these elements of Albert[ Goodman]'s testimony could be viewed as minor inconsistencies[,] . . . [t]aken as a whole . . . Albert[ Goodman]'s pattern of porous memory reveals that it is much more likely that his illness had taken such a toll on him that he was unable to maintain a

clear recollection of what he had seen and heard on the day of the homicide." *Id.* at 30. We disagree.

The competency of witnesses is governed by Pennsylvania Rule of Evidence 601, which provides:

> **(a)** **General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> **(b)** **Disqualification for Specific Defects**. A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> > (1) is, or was, at any relevant time, incapable of perceiving accurately;
> >
> > (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
> >
> > (3) has an impaired memory, or
> >
> > (4) does not sufficiently understand the duty to tell the truth.

Pa.R.Evid. 601. This Court has explained that Rule 601

> [i]s expressly intended to preserve existing Pennsylvania law. In general, the testimony of any person, regardless of [his] mental condition, is competent evidence, unless it contributes nothing at all because the [witness] is wholly untrustworthy. Thus, in Pennsylvania, [a witness is] presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence. Above all, give the general presumption of competency of all witnesses, a court ought not to order a competency investigation, unless the court has actually observed the witness testify and still has doubts about the witness' competency.
>
> The capacity to remember and the ability to testify truthfully about the matter remembered are components of testimonial competency. The party alleging a witness is

incompetent to testify must prove that contention by clear and convincing evidence.

***Commonwealth v. Boich***, 982 A.2d 102, 109-10 (Pa.Super. 2009) (*en banc*) (internal quotations and citations omitted; some alterations in original).

The PCRA court concluded that this claim was meritless:

Though counsel did not seek to exclude the testimony of Mr. Goodman on the basis that the witness was not competent, [counsel] thoroughly challenged his credibility on the same basis upon which [Culver] now contends that [Goodman] was not a competent witness. This Court made the following findings with regard to the challenge to Mr. Goodman's credibility:

This Court and the jury viewed a video tape of that testimony. Though it was apparent from the video that Mr. Goodman was ill, he did not seem to have difficulty recalling the events surrounding the death of his son and relating them. He seemed tired and responded slowly to some questions, but it is simply inaccurate to claim that his illness affected his perception or that his testimony was confused, vague, and contradictory, as [Culver] does in his [Rule 1925(b)] statement. It was clear to this Court that [Goodman's] illness or taking of medications did not affect his ability to recall events or accurately describe what he observed. There were some things about which Mr. Goodman was less than certain, things that he acknowledged that he could not remember. He was, however, clear about the essential facts of the night that his son was shot. He was cross examined by the defense as to his inability to recall events; as to apparent inconsistencies between what he told the police the night of the incident and what he testified to in Court; and as to the effect his illness and medication had on his current state of mind. What effect, if any, to give the questions raised by that cross examination as to the accuracy of Mr. Goodman's testimony, was something for the jury to decide. Clearly, Mr.

- 13 -

> Goodman was a competent witness and the jury was allowed to believe as much of his testimony as they wished.
>
> (Slip Opinion 730th, 2014). Trial counsel was not ineffective for seeking to challenge this witness[']s competence because, as the Court pointed out, this witness was both competent and credible in his testimony.

PCRA Ct. Op., 9/21/16, at 7-8. We agree with the PCRA court's conclusion.

Next, Culver argues that trial counsel was ineffective because she did not impeach Albert Goodman's testimony. Although Culver raised this issue in a response to the trial court's dismissal of his petition, he neither included it in his PCRA petition and nor obtained permission from the PCRA court to supplement or amend his petition. Accordingly, we conclude that Culver has waived this claim on appeal. *See Commonwealth v. Mason*, 130 A.3d 601, 640 (Pa. 2015) (concluding that petitioner who first asserted claim in response to Commonwealth's motion to dismiss waived claim for failure to obtain leave of court to supplement or amend petition).

Finally, Culver argues that his PCRA counsel was ineffective because, among other things, PCRA counsel failed to provide Culver with trial transcripts. It is well settled that "claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter." *Commonwealth v. Ford*, 44 A.3d 1190, 1201 (Pa.Super. 2012). Because Culver raises ineffectiveness of PCRA counsel claims for the first time on appeal from the dismissal of his PCRA petition, this Court lacks jurisdiction to consider those claims.

Culver also asserts that the PCRA court's denial of his multiple requests for transcripts violated his due process rights under the United States and Pennsylvania Constitutions. Culver claims he is entitled to a copy of the transcripts under federal and Pennsylvania law. According to Culver, "there may be very significant PCRA issues that would become clear if [he] had the chance to review the record[, and he] . . . would also be in a better position to explain why the issues he's already raised are of arguable merit if he had the opportunity to read his transcripts." Culver's Br. at 16. We disagree.

While we recognize that "a defendant's right to meaningful appeal requires he be provided with a copy of a transcript or other equivalent picture of the proceedings below," *Commonwealth v. Morgan*, 364 A.2d 891, 892 (Pa. 1976), we conclude that, under these circumstances, Culver's right to a meaningful appeal has not been violated.

First, when Culver initially requested transcripts on April 28, 2015, he had no matter pending before the courts. Thus, even with *in forma pauperis* status, he was not entitled to transcripts. *See Commonwealth v. Martin*, 705 A.2d 1337, 1338 (Pa.Super. 1998).

Next, with respect to his December 21, 2016 request, we recognize that, had Culver followed the correct procedure, he should have received his trial transcripts. However, it is evident that Culver's lack of access to those transcripts did not prevent him from receiving a meaningful appeal, as we were not hindered in determining that Culver's issues lack merit because we

received the trial transcripts from the Allegheny County Clerk of Courts. Further, we find Culver's claims specious, as Culver quoted a section of Albert Goodman's video-recorded testimony in his appellate brief. *See* Culver's Br. at 34. Accordingly, Culver is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2017