J-S67010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAZARUS MIAL | : | |
| | : | No. 2414 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence July 11, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002762-2014

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                      **FILED OCTOBER 27, 2017**

Appellant Lazarus Mial appeals from the Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County on July 11, 2016, at which time he was sentenced to life in prison without parole along with a concurrent term of five (5) years to ten (10) years in prison and two concurrent terms of two and one-half (2 ½) to five (5) years in prison following his convictions of First Degree Murder, violations of the Uniform Firearms Act, and Possession of an Instrument of Crime.[1]  We affirm in part, vacate in part, and remand for resentencing.

The trial court briefly set forth the relevant facts herein as follows:

> [Appellant] and Latosha Porter had an ongoing relationship
> until June of 2009, when Ms. Porter evicted [Appellant] from her

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6105(a)(1), 6106(a)(1), 6108, 907(a).

---

*   Former Justice specially assigned to the Superior Court.

home. On July 27, 2009, Ms. Porter met John 'Peanut' Hairston and invited him back to her house at 2046 Margaret Street in Philadelphia. Somehow [Appellant] learned that Ms. Porter had a man over her house and he stormed over there, pounding on the front door and yelling to be let in for a considerable amount of time. [Appellant] finally got into the house and confronted 'Peanut.' [Appellant] chased 'Peanut' out of the house and down a dead-end alley, where [Appellant] shot Hairston five times, resulting in his untimely death.

Trial Court Opinion, filed 1/4/17, at 3.

In her opening statement to the jury, defense counsel represented that Appellant had no involvement in Mr. Hairston's death. In fact, the first line of the statement was as follows: "[Appellant] did not kill John Hairston. [Appellant] is absolutely innocent of these charges." N.T. Trial, 6/30/16, at 38. Shortly thereafter, counsel characterized this case as one where Appellant was not just presumed innocent but was "in fact absolutely innocent" and declared Mr. Hairston's family deserved a "real investigation into who actually killed him." N.T. Trial, 6/30/16, at 45-46. Counsel suggested the incident was part of a robbery and that someone else had killed the victim. *Id*. at 40-41.

Prior to closing arguments, the trial court held a charging conference at which time defense counsel requested a voluntary manslaughter jury charge:

> Defense Counsel: We would be asking for a charge of voluntary manslaughter. In this case, obviously, we presented a defense that [Appellant] is innocent. He did not do this. However, the jury doesn't have to listen to me. My opening, her opening, my closing is not evidence.

N.T. Trial, 7/6/16, at 136.

Over the Commonwealth's objection and following additional argument and further research, the trial court ruled the next day that it would provide the standard voluntary manslaughter charge unless Appellant chose to testify and say "something different." N.T. Trial, 7/7/16, at 4, 6. The Commonwealth responded as follows:

> I don't know if they're going to argue it or not, but assuming that they're asking for the charge and they do not argue anything about it in their closing, then I think the Commonwealth should be permitted to say in my closing, that the only reason that they're getting that charge is because the defense asked for it because I think that's only fair under the scenario.
>      They don't get to have their cake and eat it too. They don't get to just say, the judge gives this instruction because you decided to give it because you thought it was appropriate. They asked for it and then they're not going to argue alternative defenses because if they strategically decide not to do that, which is probably a good decision, because that's not a good idea, but then they're still going to get the charge.

*Id*. at 11. At that juncture, the trial court stated that it "will address that when we get to the time that it's appropriate after they've closed, if that's going to be part of the issue." *Id*.

Appellant ultimately did not testify in his own defense at his trial. In asking for a ruling on the issue of whether the Commonwealth could comment regarding which party had requested that the voluntary manslaughter instruction be given, defense counsel stated "if [the prosecutor] is allowed to comment, I'm just going to withdraw my request to give the charge at all because it's not for the jury to know who asked for what charge. . . if, for some reason, she is allowed to comment on it and it leaves the impression

- 3 -

that we think we need some kind of safety net, then I'd rather not have it."

N.T. Trial, 7/8/16, at 7. A sidebar discussion was then held off the record,

after which the trial court ruled as follows:

> The Court: My ruling stays the same. If you wish to have voluntary manslaughter presented, the Commonwealth is going to be allowed, in this case, to tell the jury why that charge is being asked and that the defense asked for it.

*Id*. at 11. At that time, Appellant withdrew his request to have the trial court

instruct the jury on voluntary manslaughter. The trial court

contemporaneously noted the defense wished to object to the charge that it

was about to provide the jury because it would not include a charge on

voluntary manslaughter. *Id*. Appellant also placed an objection on the record

following the jury charge. *Id*. at 165.

Appellant filed a timely appeal following the imposition of his sentence.

After seeking and receiving an extension of time in which to file a concise

statement of the matters complained of on appeal, Appellant filed the same

on November 30, 2016. In his brief, Appellant presents the following

Statement of the Questions Presented:

> 1. Did not the trial court err in predicating a defense requested voluntary manslaughter charge to the jury, on the improper condition that the Commonwealth would then be allowed to tell the "jury why that charge is being asked and that the defense asked for it [?]"
>
> 2. Did not the trial court err by allowing the Commonwealth to instruct the jury that by seeking the manslaughter jury instruction, the defense was admitting the intentional act of killing, and that the reason for the requested instruction was an attempt by the defense to mislead the jury, and would not such

an instruction violate the defendant's rights to due process and a fair trial under both the Federal and Pennsylvania constitutions?

3. Was not the five to ten year sentence of incarceration imposed on the offense of carrying a firearm on the public streets of Philadelphia illegal because the maximum sentence for a misdemeanor of the first degree is not more than five years?

Brief for Appellant at 4. As Appellant's first two issues challenge the trial court's instructions to the jury, we address them together and begin with our standard of review:

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.
    The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.
In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*James v. Albert Einstein Med. Ctr.*, 2017 WL 4001763, at * 5-6 (Pa.Super. Sept. 12, 2017) (citation omitted). This Court has stated that the trial court is not mandated to charge the jury on voluntary manslaughter when such a charge is requested, and it may not provide the charge absent evidence to

support such a verdict. *Commonwealth v. Browdie*, 654 A.2d 1159, 1164 n. 3 (Pa.Super. 1995).

Appellant maintains that in light of the evidence the Commonwealth presented at trial, "voluntary manslaughter was an issue and the trial court (not the Commonwealth's attorney) was required to instruct the jury on the crime of voluntary manslaughter and because it would not, a new trial is warranted." Appellant posits the trial court's ruling was in error "as the giving of instructions to the jury is a judicial function that cannot be delegated to the prosecutor" and that this error was compounded by the court's "allowing the Commonwealth to instruct the jury that by seeking the manslaughter charge, the defense was admitting the intentional act of killing (N.T. 7/6/16, 139) and that the reason for the requested charge was an attempt by the defense to mislead the jury (N.T. 7/8/16, at 8)" which statements were "improper and prejudicial" and constituted "prosecutorial misconduct." Brief for Appellant at 13, 26.

Appellant further contends that "[a]s defense counsel did not put on a defense, she was free to argue any defense reasonably suggested by the evidence" and in doing so reasons a jury instruction "that [A]ppellant was conceding that he killed intentionally invaded the province of the jury to determine the facts and what, if any, crimes were committed. It took away the jury's option of finding the Commonwealth's evidence lacking and that a reasonable doubt existed as to [A]ppellant's guilt on the murder charge, or,

on the contrary, that [A]ppellant in their estimation was guilty but only of voluntary manslaughter." Brief for Appellant at 25. Appellant argues that the prosecutor's disparaging comments and its "proffered explanation to the jury for why the defense counsel was requesting a manslaughter instruction constitute[] prosecutorial misconduct." Brief for Appellant at 26. Appellant concludes that "[a]s the trial court in this case abdicated its duty to instruct the jury by delegating its authority to the Commonwealth's attorney, [A]ppellant was denied due process and a fair trial. A new trial should be granted." *Id*. at 18.

Following a review of the record, we agree with the trial court's determination that Appellant's claims lack merit. In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court cited to caselaw for the proposition that there is no prohibition against the Commonwealth being permitted to discuss applicable principles of law to the jury in its closing argument, so long as it does so clearly and accurately. Trial Court Opinion, filed 1/4/17, at 4 (citations omitted). The trial court also relied upon long-standing precedent holding that while prosecutors may not express their personal opinions concerning a defendant's guilt, they have considerable latitude during closing argument to comment upon the evidence presented at trial and appropriate inferences that may be drawn therefrom as well as to present their arguments with "oratorical

flair." *Id*. at 5.[2]  The trial court stressed that the standard jury instruction for voluntary manslaughter concedes that a defendant killed another but maintains that the extenuating circumstances surrounding the crime reduce its severity; therefore, the Commonwealth rightfully could have argued to the jury during closing arguments that it was not interested in a voluntary

---

[2] In this regard, our Supreme Court has held:

> [a] prosecutor "has great discretion during closing argument" and is "free [to present] his [or her closing] arguments with logical force and vigor." ***Commonwealth v. Eichinger****, –––Pa. ––––, 108 A.3d 821, 836 (2014) (citation omitted). Thus, we will allow "vigorous prosecutorial advocacy" if "there is a reasonable basis in the record for the [prosecutor's] comments." **Commonwealth v. Robinson***, 581 Pa. 154, 864 A.2d 460, 516 (2004) (internal quotation marks omitted). Stated differently, "[p]rosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair." ***Commonwealth v. Chmiel****, 612 Pa. 333, 30 A.3d 1111, 1146 (2011). In reviewing an allegation of prosecutorial misconduct, we will find that "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and reach a fair verdict." ***Commonwealth v. Tedford****, 598 Pa. 639, 960 A.2d 1, 33 (2008).

***Commonwealth v. Cash***, 635 Pa. 451, 471, 137 A.3d 1262, 1273 (2016), *cert. denied*, ***Cash v. Pennsylvania***, 137 S. Ct. 1202, 197 L. Ed. 2d 249 (2017).

manslaughter finding and, instead, believed a first degree murder conviction was appropriate. *Id*. at 5-6.[3]

Appellant characterizes the hypothetical statements the prosecutor may have made during closing argument as usurping the exclusive responsibility of the trial court to charge the jury as to the applicable law. However, Appellant's arguments pertain only to what prejudice he surmises he would have suffered *if* defense counsel did not mention voluntary manslaughter in her closing and *if* the prosecutor commented regarding the source and applicability of a voluntary manslaughter charge which ultimately was never even given. In fact, the prejudicial effect of the prosecutor's alleged "disparaging" remarks is non-existent, for the trial court did not provide a

_____

[3] In fact, our Supreme Court has held that following its charge on voluntary manslaughter, a trial court did not err in telling the jury that in its opinion under the facts and circumstances of the case, voluntary manslaughter would not be an appropriate verdict where the court also clearly had instructed the jury that it was not bound by the court's opinion as to the lack of evidence to support such a verdict. *Commonwealth v. Cook*, 597 Pa. 572, 636–37, 952 A.2d 594, 633 (2008). The Court stressed the defendant had failed to present any evidence to support a voluntary manslaughter conviction and that in his closing argument defense counsel repeatedly asserted that the Commonwealth had not presented any credible evidence defendant had been involved in the killing. The Court concluded the trial court's "charge left it open for the jury to return an unsupported verdict of voluntary manslaughter, which would have been an unwarranted windfall for appellant." *Id*. at 638–39, 952 A.2d at 633–34.

voluntary manslaughter instruction due to Appellant's own request that it not be given.

Appellant's objection to what the jury charge lacked, *i.e.* a voluntary manslaughter charge, was the result of defense counsel's tactical decision not to request that charge, not the trial court's alleged abdicating of its duty to charge the jury in favor of the Commonwealth who made no comments in its closing argument concerning voluntary manslaughter. If the instruction had been given, if the prosecutor discussed it during closing arguments, and if Appellant believed the prosecutor's comments were improper, he could have objected at the appropriate juncture during trial or asked for a mistrial. As such, Appellant has failed to show, in fact, that his constitutional rights were violated or that he was prejudiced, as the voluntary manslaughter instruction was not given due to a strategic decision defense counsel made not to seek it. *See e.g. Commonwealth v. Norman*, 549 A.2d 981, 986 (Pa.Super. 1988) (*en banc*) ("[w]hen counsel chooses to refuse appropriate curative instructions for legitimate tactical reason, the defense may not plead prejudice on appeal").[4]

_____

[4] Indeed, even if the Commonwealth had mentioned an anticipated voluntary manslaughter instruction in its closing argument, as it states in its appellate brief, the purpose of the discussion would have been to dispel any resultant confusion to the jury due to the Commonwealth's failure to charge Appellant with voluntary manslaughter at the outset of the case. The Commonwealth reasons, "[h]ad the trial court insisted on that uncharged offense without argument or comment from the parties, it would have given the appearance

In fact, Appellant's brief contains no challenge to or claims of inadequacy regarding the actual jury charge which included the lesser alternative of third-degree murder and a clear directive that "[y]ou have the right to bring in a verdict finding [Appellant] not guilty or finding him guilty of one of these types of criminal homicide."    The trial court provided the jury with an opportunity to exercise its mercy-dispensing power in defining the elements of two types of criminal homicide.   The jury chose to find Appellant guilty of first-degree murder.   N.T. Trial, 7/8/16, at 152, 155-56.  Thus, Appellant's first two claims lack merit.

The final issue Appellant presents herein challenges the legality of his sentence for violating 18 Pa.C.S.A. § 6108, Carrying firearms on public streets or public property in Philadelphia.   Appellant did not raise this claim in his Statement of Errors Complained of on Appeal and, instead, raised it for the first time in his appellate brief.[5]   Brief for Appellant at 14.   However, a challenge to the legality of one's sentence cannot be waived.   ***See Commonwealth v. Barnes***, ___ Pa. ____, ___151 A.3d 121, 124 (2016) (citation omitted) ("[A]n exception to the issue-preservation requirement

_____

that the court was proposing the verdict."  Commonwealth's Brief at 6. Regardless, as defense counsel admitted during trial and as the trial court informed the jury, opening and closing statements of counsel do not constitute evidence.  N.T. Trial, 7/6/16, at 136; N.T. Trial 7/8/16, at 161-62.  Thus, Appellant mischaracterizes any such potential statements as the Commonwealth's act of instructing the jury in lieu of the trial court.
[5] The trial court did not consider this issue in its Rule 1925(a) Opinion.

exists where the challenge is one implicating the legality of the appellant's sentence.").

The Commonwealth concedes the sentence on this conviction, a misdemeanor of the first degree under 18 Pa.C.S.A. § 6119, is illegal because the five (5) year to ten (10) year sentence exceeds the statutory maximum. **See** Commonwealth's Brief at 10; 18 Pa.C.S.A. § 106(b)(6) "[a] crime is a misdemeanor of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than five years." Because the trial court erroneously sentenced Appellant regarding this charge, we remand so that the trial court can resentence Appellant thereon. **See Commonwealth v. Wilson**, 594 Pa. 106, 934 A.2d 1191 (2007) (where appellate court's disposition upsets trial court's original sentencing scheme, remanding for resentencing is appropriate disposition).

Judgment of sentence vacated in part. Case remanded for resentencing on the 18 Pa.C.S.A. § 6108 conviction only. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2017