J-S03010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS EDWARD RADECKI | : | |
| | : | |
| Appellant | : | No. 727 WDA 2020 |

Appeal from the PCRA Order Entered July 1, 2020
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000540-2013

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                         **FILED: APRIL 23, 2021**

Appellant, Thomas Edward Radecki, appeals from the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.   He raises numerous claims alleging ineffective assistance of trial counsel.  After careful review, we affirm.

In April 2016, after a two-week trial, a jury convicted Appellant of nine counts of Unlawful Prescription of Controlled Substance by Practitioner ("Unlawful Prescription"), and one count each of Conspiracy, Dealing in Proceeds of Unlawful Activities, and Corrupt Organizations.[1]   On September

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant was a psychiatrist who had four offices in Clarion and three other counties where he and other physicians and nurse practitioners treated people with drug addictions. Only three of the four locations were licensed to dispense controlled substances. The Drug Enforcement Agency ("DEA") and the

21, 2016, the trial court imposed an aggregate sentence of 133 months to 266 months' incarceration. This Court affirmed the Judgment of Sentence. *Commonwealth v. Radecki*, 180 A.3d 441 (Pa. Super. 2018). Appellant did not seek review from the Pennsylvania Supreme Court.

Appellant filed a timely PCRA Petition, later supplemented, asserting numerous ineffective assistance of counsel claims, including counsel's failure to raise certain objections and present certain evidence, such as testimony from a third medical addiction expert, to demonstrate that the volume and method of his business fell within acceptable medical standards of office-based addiction treatment.[2]

Pennsylvania Office of Attorney General ("OAG") began investigating Appellant's practice throughout the four counties in 2010 after receiving reports from pharmacies and other psychiatrists that Appellant ordered and provided, either in his office or via prescription, excessive doses of buprenorphine (Subutex and Suboxone), benzodiazepines (Klonopin, Xanax), Ritalin, and Adderall. After a grand jury investigation, the OAG charged Appellant in 2013 in connection with his treatment of thirteen patients, as well as Conspiracy, Dealing in Unlawful Proceeds, and Corrupt Organizations. The Commonwealth presented evidence at trial showing, among other things, that many of Appellant's patients were poor, young women addicted to opioids and Adderall/Ritalin whom Appellant exploited by cultivating sexual relationships with them in exchange for free drugs, free housing, office jobs, and forgiveness of account balances. *Commonwealth v. Radecki*, 180 A.3d 441, 446-448, 470 (Pa. Super. 2018). In addition to testimony from Appellant's patients, many drug investigators, and Cardinal Health (Appellant's medication wholesaler), the Commonwealth presented extensive expert testimony at trial from Dr. Russell H. Carter who reviewed the files of the patients at issue in this case and opined that Appellant's treatment of each of them fell below standards accepted by the medical profession.

[2] Dr. William Santoro, M.D., testified on Appellant's behalf at trial as a board-certified expert in the field of addiction medicine, contradicting many of Dr.

On August 9 and November 5, 2019, the PCRA court held evidentiary hearings at which the court heard testimony from Appellant; Dr. Brian Johnson, an addiction expert from New York who disputed the Commonwealth's medical expert; Jill Muntz, a nurse practitioner who worked in Appellant's office for six months in 2012; and Joseph Troese, Esq., Appellant's trial counsel, among others. On June 30, 2020, the PCRA court denied relief, concluding that Appellant "has not met his burden of proving that attorney John Troese committed errors which probably undermine confidence in the guilty verdict and make it unreliable." PCRA Ct. Op, 6/30/2020, at 10.

Appellant timely appealed. Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

## Issues

Appellant raises the following questions for our review:

1. Did the PCRA court err[ed] in finding trial counsel was effective in failing to request and/or secure an expert report from Dr. Brian Johnson and in failing to present the expert medical testimony by Dr. Johnson, which would have refuted the testimony of Dr. Carter, Agent Embree, Bonnie Anthony, Dr.

_____

Carter's statements. **See** N.T. Trial, 4/22/16, at 237-321. He testified that Appellant's treatment of each of the patients at issue was done in good faith and within the scope of the doctor-patient relationship.

Appellant also testified as an expert in substance abuse addiction. **See** N.T. Trial, 4/19/16, at 193-94. Both Appellant and Dr. Santoro testified that Appellant's treatment of the thirteen patients was appropriate and accepted within the medical addiction treatment community.

Hartwell, Heidi Gregg, Denise Irwin, and other Commonwealth witnesses?

2. Did the PCRA court err[ed] in finding trial counsel was effective in failing to present Jill Muntz?

3. Did the PCRA court err[ed] in finding trial counsel was effective when he failed to introduce and question the expert witnesses, including but not limited to Dr. Santoro, Dr. Radecki, Dr. Carter, and (Dr. Johnson had he called him), concerning studies on retention rates for buprenorphine treatment, which Dr. Radecki provided to him prior to trial?

4. Did the PCRA court err[ed] in finding trial counsel was effective in not introducing or adequately questioning the expert witnesses, including Dr. Radecki, (Dr. Johnson), Dr. Santoro, and Dr. Carter about weaning patients off of buprenorphine?

5. Did the PCRA court err[ed] in finding trial counsel effective in not providing to the Commonwealth Dr. Radecki's 1800 patient records and expert report of how many of his patients had been treated with which medications & what their retention rates were and the drug urine screens including male vs. female, where Judge Amer had denied the Commonwealth's pre-trial motion to preclude evidence of Dr. Radecki's practice as a whole, and the Commonwealth introduced evidence concerning Dr. Radecki's practice as a whole through Heidi Gregg, Denise Irwin, and Malorie McFarland?

6. Did the PCRA court err[ed] in finding trial counsel was effective in failing to present evidence that Mr. Morse'[s] testimony that Dr. Radecki purchased 589,140 units of buprenorphine was grossly erroneous;

7. Did the PCRA court err[ed] in finding trial counsel effective in failing to impeach the purported "expert" testimony of Agent Embree concerning the issue of abuse of buprenorphine and the effects of naloxone and not questioning Dr. Radecki or presenting Dr. Johnson to testify concerning studies which showed that naloxone has zero effect on oral abuse, minimal if any effect on intranasal abuse, and a minor effect, if any, on deterring IV abuse?

8. Did the PCRA court err[ed] in finding trial counsel was effective in his questioning of Dr. Radecki?

9. Did the PCRA court err[ed] in finding trial counsel was effective in failing to object to testimony by Shawna Riva concerning her treatment and her sister's treatment by Dr. Radecki where there was no allegation that Dr. Radecki improperly prescribed medications to her or her sister and in failing to object to Jessica Neely's claims that she was raped as a result of taking medications prescribed by Dr. Radecki?

10. Did the PCRA court err[ed] in finding trial counsel was effective in failing to adequately rebut the erroneous testimony of Jessica Neely that Appellant had "a house he keeps girls in[,]" N.T., 4/14/16, at 154, and that Appellant had a "house with girls in it[,]" *id.* at 155?

11. Did the PCRA court err[ed] in finding trial counsel effective when he failed to object to Dr. Russell Carter's expert testimony in which he erroneously testified that having a sexual relationship with a patient was against the penal laws of Pennsylvania?

12. Based on all of the aforementioned claims, . . . the cumulative errors in this matter [were] so significant that they deprived Dr. Radecki of a fair trial in violation of his due process rights and his state and federal constitutional right to a fair trial?

Appellant's Br. at 6-7 (reordered).

**Relevant Legal Standards**

*PCRA review*

We review an order denying a PCRA petition to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)). "[We] must defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record." *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018) (emphasis and citation omitted). However, we give no

deference to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

### *Ineffective assistance of counsel*

Appellant alleges trial counsel provided ineffective assistance. In addressing such claims, we presume counsel is effective. ***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. ***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." ***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1044 (Pa. Super. 2019).

"If a petitioner fails to satisfy any prong of the ineffectiveness inquiry, a claim of ineffective assistance of counsel will be rejected." ***Commonwealth v. Eichinger***, 108 A.3d 821, 830-31 (Pa. 2014) (citation omitted). Thus, "if it is clear that [an a]ppellant has not established that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether

the first and second prongs have been met." ***Commonwealth v. Gribble***, 863 A.2d 455, 460-61 (Pa. 2004) (citation omitted).

Finally, it is well settled that a defendant is entitled to a fair trial, not a perfect one. ***Commonwealth v. Laird***, 119 A.3d 972, 986 (Pa. 2015). An ineffectiveness claim will not succeed where a petitioner claims, with the benefit of hindsight, that counsel could have conducted his trial differently. ***Id.*** In addition, the failure to present witness testimony that would have been merely cumulative of other evidence he presented will not support a finding of ineffective assistance of counsel where there is sufficient evidence in the record for conviction. ***Commonwealth v. Showers***, 782 A2d 1010, 1022 (Pa. Super. 2001).

### Unlawful prescription, 35 P.S. § 780-113(a)(14)

Appellant asserts that counsel's actions and omissions likely contributed to his nine convictions for Unlawful Prescription. The statute defining this offense provides that a medical practitioner may not prescribe a controlled substance unless it is done (1) "in good faith in the course of his professional practice," (2) "within the scope of the patient relationship," and (3) "in accordance with treatment principles accepted by a responsible segment of the medical profession." 35 P.S. § 780-113(a)(14). To establish a violation, the Commonwealth must prove beyond a reasonable doubt that the defendant-practitioner wrote a prescription that violated any one of these three standards. ***Commonwealth v. Salameh***, 617 A.2d 1314, 1315-16 (Pa. Super. 1992).

**Issues 1 and 2: Counsel's Failure to Call Dr. Johnson and Jill Muntz**

Appellant first asserts that trial counsel was ineffective for failing to present testimony at trial from Dr. Johnson and Jill Muntz, the nurse practitioner who worked at Appellant's unlicensed location in Kane County. Appellant's Brief at 29, 73-74.  He contends Dr. Johnson's and Ms. Muntz's testimony was necessary to refute the Commonwealth's evidence that prescribing benzodiazepines (Klonopin) with buprenorphine (Subutex) is "inappropriate" and "dangerous." Appellant's Br. at 36, 73.  After providing a detailed recitation of Dr. Johnson's PCRA testimony, emphasizing numerous instances where Dr. Johnson's PCRA hearing testimony either rejected or directly contradicted the Commonwealth's expert's testimony, Appellant concludes that because Dr. Johnson is "one of the world's leading experts in addiction medicine," he suffered prejudice from counsel's failure to present his testimony.  ***Id***. at 28-40.[3]  Appellant also avers that counsel should have called Ms. Muntz as a fact witness at trial.

---

[3] In pre-trial proceedings, the court provided three different dates to Appellant by which to produce Dr. Johnson's expert report. Less than one month before trial, on March 21, 2016, Appellant's counsel again inquired whether Dr. Johnson could testify as an expert even though Dr. Johnson had not produced an expert report.  Because Appellant had failed to meet the three deadlines, and still had not provided a written report from Dr. Johnson, the court decided Dr. Johnson could not testify as an expert. ***Commonwealth v. Radecki***, 180 A.3d 441, 453 (Pa. Super. 2018).  In addition, counsel attempted to call Dr. Johnson at trial as a fact witness but the court ultimately forbid his testimony as hearsay and, again, as precluded for failing to present an expert report. N.T., 4/22/16, at 184.

"To be entitled to relief on a claim of ineffectiveness for failure to call a witness, an appellant must demonstrate that (1) the witness existed; (2) was available, and willing to cooperate; (3) counsel knew or should have known of the witness; and (4) the absence of the witness's testimony prejudiced the appellant." **Commonwealth v. Johnson**, 139 A.3d 1257, 1284 (Pa. 2016) (citation omitted). To establish prejudice, a petition must show that the missing testimony "would have been beneficial under the circumstances of the case." **Commonwealth v. Sneed**, 45 A.3d 1096, 1109 (Pa. 2012) (citation omitted). A claim will not succeed if the proposed witness's testimony "would not have materially aided him." **Commonwealth v. Bauhammers**, 92 A.3d 708, 725 (Pa. 2014).

Both Dr. Johnson and Ms. Muntz appeared at Appellant's PCRA hearing and testified that Appellant's counsel knew that they were available and willing to testify at Appellant's trial.[4] Although these witnesses could testify generally in support of Appellant's treatment program, neither of them addressed the specific allegations pertaining to Appellant's treatment of the thirteen patient-victims underlying his criminal charges. **See, e.g.**, N.T. PCRA, 8/9/19, at 116 (Dr. Johnson testifying that he knew insufficient details about Appellant's

---

[4] Ms. Muntz was named as a co-conspirator but at the time of Appellant's trial, she had not yet been charged and the statute of limitations had not yet expired. **See** N.T.,4/22/16, at 4. Although the defense sent her a subpoena and she did show up to testify at trial, defense counsel stated that because of her potential criminal liability, "I don't think she's going to testify, and I don't want to put her in that position." **Id**. at 5.

impregnating a patient) and 21-40 (Ms. Muntz testifying generally about Appellant's tapering practice).

Our review of the record indicates that neither Dr. Johnson nor Ms. Muntz could have testified that Appellant prescribed and administered medications to the specific nine patient-victims (1) in good faith and (2) within the scope of the patient relationship. Accordingly, their generalized testimony would not have materially aided Appellant in rebutting the Commonwealth's evidence proving those elements of the crime of Unlawful Prescription.

Further, in light of the plethora of evidence presented against Appellant, we find the PCRA court properly exercised its discretion in finding that Appellant was not able to establish that, but for counsel's error or omission, there is a reasonable probability that the result of the proceeding would have been different. Seven former patients, thirteen drug enforcement investigators, including one from Appellant's medication wholesaler, at least two pharmacists, two doctors who practiced with him, and several other employees, in addition to the expert witnesses, testified regarding his over-prescription of addictive medications, his providing controlled substances without a prescription at times and from unlicensed locations, and his inappropriate behavior towards women patients, to prove Appellant guilty of not only Unlawful Prescription with respect to the nine patient-victims, but also Corrupt Organizations, Conspiracy, and Dealing in Proceeds of Unlawful Activities. We discern no abuse of the PCRA court's discretion and conclude no relief is due on these issues.

## Issue 3: Retention rates of patients

Appellant next asserts that counsel should have presented numerous retention rate studies and questioned the medical experts, including himself, more vigorously about the importance of patient retention rates in demonstrating successful substance abuse treatment programs. Appellant's Brief at 42-43.  He contends that this evidence would have led the jury to conclude that Appellant's "prescribing practices were within the mainstream of buprenorphine treatment."  *Id.* at 43.  Appellant notes that he testified at trial that retention rates for a buprenorphine program of 38% is considered a quality program and studies, if admitted, would have shown that his retention rate of 54%, as testified to by Dr. Johnson, was "stellar" and "well-above average." *Id*. at 42-43.

Our review indicates that Appellant presented testimony from both himself and Dr. Santoro about the importance of retention rates during the trial.  In his four-paragraph argument, Appellant does not cite any case law or attempt to articulate how even more, essentially identical, evidence demonstrating the importance of retention rates of treatment programs generally would rebut the Commonwealth's evidence.  Accordingly, Appellant has not established that but for counsel's failure to present more evidence regarding retention rates of mainstream drug programs, there is a reasonable probability that the jury's verdict would have been different.

## Issue 4: Medication reduction treatment studies

Appellant also asserts that counsel "did not adequately question either Dr. Santoro or [Appellant] concerning weaning patients off buprenorphine" with the use of numerous studies. *Id*. at 43-44. He contends that, as a result, the jury was not informed that Appellant "had a weaning program in place that was designed to slowly taper his patients [ ] to prevent relapses and possible death." *Id*. at 44. He contends that counsel's failure to introduce this evidence "left undisputed" the Commonwealth's argument that Appellant sought to prolong his patients' substance abuse rather than treat it responsibly. *See id*., at 44-45.

The record belies Appellant's contention that the jury was not informed about Appellant's weaning program. In fact, Appellant testified that he slowly and deliberately tapered his patients' buprenorphine dosage. N.T. Trial, 4/21/16, at 64-66. In addition, Dr. Santoro agreed that this strategy was appropriate. N.T. Trial, 4/22/16, at 272. Thus, the record does not support Appellant's contention that the Commonwealth's theory was not rebutted.

Moreover, Appellant again does not provide legal authority to support his argument. He also fails to articulate how admission of medical studies regarding general addiction treatment would have countered the evidence, found credible by the jury, that Appellant did not prescribe the drugs in good faith or within the patient relationship with respect to the nine patient victims whose treatment engendered his convictions. Accordingly, he has not established that but for counsel's omission, the outcome of the proceeding would have been different.

**Issue 5: All Patient Records**

Appellant next asserts trial counsel was ineffective for failing to provide the Commonwealth with the records of all of his 1800 patients and a summary report Appellant himself compiled regarding his treatment of each patient, their drug screen results, and those patients' retention rates. *Id*. at 49. He notes that he asked trial counsel to provide the records and tabulations to the Commonwealth, but counsel allegedly informed Appellant "that he would surprise the Commonwealth with the information at trial." *Id*.

Again, Appellant does not provide citation to legal authority or develop any argument to inform us how such evidence negates the Commonwealth's evidence that Appellant's treatment of the nine patient-victims was not in good faith or within the patient relationship. Appellant's summary conclusions about his overall practice percentages do not establish that had counsel provided this evidence to the Commonwealth, the jury would likely have rendered a different verdict.

**Issue 6: Volume of Buprenorphine Purchases**

Appellant asserts that counsel should have presented evidence to refute testimony presented by the Commonwealth's witness from Cardinal Health who testified that Appellant purchased 589,140 dosages of buprenorphine in 2011.[5] *Id*. at 61. Appellant contends that counsel should have called

---

[5] On cross-examination, Appellant's attorney elicited from the Cardinal Representative that the doses purchased by Appellant in 2011 were closer to 223,200. N.T., 4/14/16, at 41.

Appellant's daughter, then a medical student who had worked in Appellant's office, to testify about the pill purchases because she had reviewed the raw data provided by the Commonwealth on a CD showing Appellant's purchases from Cardinal Health in 2011 and concluded that the actual number of doses purchased by Appellant was closer to 100,000. Appellant's Br. at 61.

As with the prior issue, Appellant fails to articulate how this evidence would have shown that Appellant prescribed medication to the nine patient-victims in good faith and within the patient relationship. Accordingly, he has not shown how the outcome of his proceeding would have been different but for counsel's omission.

**Issue 7: Ineffective Questioning of Investigator Embree**

Appellant asserts that counsel should have impeached certain testimony presented by Commonwealth witness Agent James Embree. Appellant's Br. at 45. Specifically, Appellant contends that counsel should have presented witnesses to counter Agent Embree's testimony that it was easier for patients to abuse Subutex, Appellant's preferred buprenorphine treatment, than Suboxone, which contains naloxone. *Id*. at 45. In support, Appellant emphasizes Dr. Johnson's PCRA testimony that "[t]here is essentially no difference" between Subutex and Suboxone. *Id*. at 46, citing N.T. PCRA, 8/9/19, at 59. He also emphasizes his own PCRA testimony regarding the effects of naloxone contained in Suboxone and contends that counsel's failure to impeach Agent Embree's testimony was prejudicial because it left

unchallenged the Commonwealth's theory that Appellant sought to prolong his patients' addiction. **See** Appellant's Br. at 48.

Appellant's contention is illogical and unsupported by the record. In fact, there *was* testimony challenging the Commonwealth's theory: the record shows that both Appellant and Dr. Santoro testified that the naloxone contained in Suboxone limited the euphoric effects of buprenorphine, thereby limiting the risk that a patient would misuse the medication. **See** N.T., 4/22/16, at 88-89, 252. This testimony mirrors Agent Embree's testimony. Therefore, impeaching Agent Embree's testimony would have likewise impeached Appellant's credibility and the credibility of his own expert. Accordingly, Appellant cannot demonstrate that counsel's omission was without strategic reason or that it caused prejudice.[6]

**Issue 8: Appellant's own testimony**

Appellant also asserts counsel should have asked Appellant different questions while he was testifying in order to lead the jury to conclude he was not guilty of Unlawful Prescription. Appellant's Br. at 52-57. Appellant asserts that to refute the Commonwealth's position that Appellant was not prescribing in good faith, counsel should have asked him questions to: (1) highlight the differences between him and the Commonwealth's expert, Dr. Russell Carter, with respect to addiction education and expertise; (2) explain why Appellant

---

[6] In addressing Appellant's direct appeal, this Court noted that Agent Embree's testimony was cumulative of that offered by Dr. Carter and Dr. Santora so any error in the admission of this testimony was harmless. **Radecki**, 180 A.3d at 462.

- 15 -

preferred to prescribe Subutex over Suboxone; and (3) expound on studies regarding opioid dependent patients with co-existing anxiety disorders and ADHD. Appellant asserts that he suffered actual prejudice because more detailed evidence from Appellant "would have cast significant doubt on the testimony of multiple Commonwealth witnesses." *Id*. at 58.

Appellant's contentions do not convince us that counsel's performance rendered him unable to have a fair trial. Appellant testified at length over the course of three days about his medical credentials, his experience treating patients with opioid addiction and other mental health issues, and the specific allegations made by his patients. *See, e.g.*, N.T. Trial, 4/19/16, at 168-94 (testifying to his credentials); N.T. Trial, 4/21/16, at 117-23 (addressing treatment for those with opioid addiction and Attention Deficit Hyperactivity Disorder), 140-97 (addressing specific allegations); N.T. Trial, 4/22/16, at 26-72 (same). Appellant's hindsight conclusion that his own testimony was flawed and inadequate because it did not persuade the jury of his innocence ignores the plethora of evidence that convinced the jury that he did not prescribe to nine patients "in good faith in the course of his professional practice," and "within the scope of the patient relationship." 35 P.S. § 780-133(a)(14). Appellant's argument does not demonstrate that but for counsel's omissions, the outcome of the trial would have been different. Accordingly, no relief is due on this claim.

**Issues 9: Failure to object to testimony from Shawna Riva and Jessica Neely**

Appellant claims he suffered actual prejudice when counsel failed to object to testimony from two of his patients on relevancy grounds because the Commonwealth did not charge Appellant with unlawfully prescribing medications to these patients. *See* Appellant's Br. at 65-67, 69-72. He notes that trial counsel agreed at the PCRA hearing that he should have objected to Shawna Riva's testimony regarding Appellant's unsuccessful treatment of her sister and he did not know why he did not object. *Id*. at 66, citing N.T. PCRA Hearing, 8/9/19, at 148. Appellant also notes that trial counsel admitted at the PCRA Hearing that testimony from Jessica Neely regarding her alleged rape after having taken Lithium was irrelevant and prejudicial.[7] Appellant's Br. at 66, citing N.T. Trial, 8/9/19, at 144. Appellant argues that because the Commonwealth insisted that treatment of patients other than the thirteen alleged patient-victims was irrelevant and the Commonwealth did not charge Appellant with improperly prescribing to Nealy, Riva, or Riva's sister, his counsel's failure to object was highly prejudicial. Appellant's Br. at 66.

Our review of the PCRA hearing confirms that trial counsel stated that Neely's testimony regarding the rape was irrelevant and prejudicial, and that

---

[7] Neely testified that she was at a party after having taken Klonopin, Subutex, and Lithium prescribed or otherwise provided by Appellant and, after having a couple of drinks, she passed out and woke up in the hospital with bruises between her thighs and blood on her. *Id*. at 163-64. She stated she "[didn't] really remember" what happened and attributed her inability to remember to Lithium. *Id*. at 163-64. She also stated she had been raped. *Id*. The DNA kit revealed only the presence of her boyfriend's sperm. N.T. Trial, 4/14/16, at 164.

he should have objected to Ms. Riva's testimony about her sister. N.T. PCRA, 8/9/19, at 144, 148. He also stated that "some of the witnesses sounded so unbelievable that I thought just let their testimony stand. . . . I think [Neely] is one of the witnesses that – some of the stuff that they said was outlandish." *Id*. at 147.

Assuming this claim has merit, and assuming trial counsel's acknowledgment and explanation of his failure to object falls short of a reasonable strategy, we consider whether "there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (citation omitted).

We conclude that, even if counsel had objected, the outcome of the trial would not have changed in light of the evidence presented at trial. As noted above, seven former patients, thirteen drug enforcement investigators, including one from Appellant's medication wholesaler, at least two pharmacists, two doctors who practiced with him, and several other employees, in addition to the expert witnesses, testified regarding Appellant's over-prescription of addictive medications, his providing controlled substances without a prescription at times and from unlicensed locations, and his inappropriate behavior towards women patients, to prove Appellant guilty of not only Unlawful Prescription with respect to the nine patient-victims, but also Corrupt Organizations, Conspiracy, and Dealing in Proceeds of Unlawful

Activities.  It is unlikely that if Appellant's counsel had objected to the specific testimony Appellant now challenges, the outcome of the trial would have been different.

**Issue 11: Failure to object to Dr. Carter's erroneous statement of law**

Appellant also claims counsel should have objected when Dr. Carter erroneously testified that a sexual relationship between a doctor and patient was "a violation of the penal code in Pennsylvania."  Appellant's Br. at 67-68. He notes that "[w]hile unethical, having a sexual relationship with a patient is not, alone, against the law."  *Id*. at 68.  While Appellant is correct in his assessment, we nonetheless cannot conclude Appellant suffered prejudice sufficient to warrant a new trial as a result of counsel's omission.

Dr. Carter testified over the course of two days, providing his expert opinion of Appellant's medical treatment program.  When asked his opinion of a hypothetical situation in which a prescribing doctor maintained a sexual relationship with his patient, Dr. Carter responded: "Clearly unacceptable.  I mean, if you look at the American Psychological Association, it says don't.  The American Psychiatric Association says don't.  The AMA says don't.  All of the states say don't, including Pennsylvania.  It's a violation of the penal code in Pennsylvania."  *Id.*

Our review of the PCRA hearing testimony and the trial testimony reveals that counsel had a reasonable strategy for not objecting to Dr. Carter's brief reference to the penal code. The Commonwealth did not dwell on or highlight this statement, and quickly moved on to another subject.  *See* N.T.

- 19 -

Trial, 4/19/16, at 67-68. Any objection by counsel would have only emphasized the entire comment to the jury.

Moreover, Dr. Carter's erroneous reference to the penal code was brief and, in light of the plethora of evidence against Appellant, we cannot conclude Appellant suffered prejudice. Accordingly, this issue warrants no relief.

**Issue 12: Cumulative Prejudice**

In his final claim, Appellant asserts that counsel's numerous errors, in the aggregate, undermined confidence in the jury's verdict. Appellant's Br. at 72. "We have often held that no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) (citation and quotation marks omitted). "However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit." *Id.* "When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." *Id.*

The PCRA court addressed the possibility of cumulative prejudice resulting from trial counsel's representation and determined that, even if Appellant had established each discrete claim of counsel's ineffectiveness, there was no reasonable probability that the verdict would have been different. PCRA Ct. Op., 7/1/20, at 23. We agree with the PCRA court's conclusion. Based upon our review of each of Appellant's ineffectiveness claims, there is no cumulative prejudice sufficient to undermine confidence in the jury's verdict.

**CONCLUSION**

In summary, Appellant is not entitled to retry his case with the benefit of hindsight. While it is certainly possible to comb through a record as extensive as this and find minor inaccuracies or missteps by any competent counsel, we disagree with Appellant that any of these alleged errors, if corrected, would have changed the outcome of this trial.

Order affirmed.

Judge Murray joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/23/2021